## Case No. 13,138.

### SNELL et al. v. FAUSSATT.

[1 Wash. C. C. 271.][1]

Circuit Court, D. Pennsylvania. April Term, 1805.

PRIZE—CONDEMNATION AND SALE — RIGHTS OF PURCHASER—FOREIGN ADMIRALTY COURTS— CONSTITUTION THEREOF—PRESUMPTIONS.

1. It is incumbent on a defendant, who claims a vessel under a condemnation, by a foreign tribunal, to prove that the tribunal was properly constituted. Failing to do this, the condemnation is a nullity.

[Cited in brief in Rankin v. Goddard, 54 Me. 31.]

2. Where a condemnation is by a foreign court, it will be presumed to be a legal one, if the constitution of it be not known.

3. Where its constitution is known, it is proper for the court to examine into it; and, if it has been constituted by a different authority, from what is usual in civilized nations, it becomes him, who would support its jurisdiction, to prove it was erected by proper authority.

4. The erection of courts, is, in all civilized nations, the act of the sovereign; although he may delegate the authority to subordinate agents.

5. It is unusual for a military commander to exercise the right to erect courts; and nothing will be presumed in favour of tribunals so established.

Trover for a quantity of coffee. The case stated by the plaintiff, was; that the Charlotte, being his property, took in at Cape François, in 1783, a quantity of coffee for the plaintiff, and some for other shippers; and

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

whilst on her return to New-York, was captured by a British frigate; part of her hands taken out; a prize-master put on board, and ordered for Jamaica. After being in possession of the British prize-master for some days, she was captured by a French privateer, and carried into St. Jago de Cuba. Having lain there for a short time, her cargo, or a part of it, was transhipped into a vessel called the Messenger, and was brought to Philadelphia; came to the possession of the defendant; who, on demand by the plaintiff, refused to deliver it up; saying, it had been purchased at Cuba for him, by his super-cargo.

The defence was: 1. That the evidence adduced by the plaintiff, did not show his property in the coffee, delivered to the defendant; that the marks of the barrels and bags, as entered at the custom house here, did not correspond with those put on them at St. Domingo; and therefore, that if the coffee taken in by the Messenger at Cuba, was proved to have come from the Charlotte, yet it might as well be the coffee of the other shippers, as of the plaintiff; and if so, a recovery in this action, would be no bar to an action by those persons. 2d. That by an order of General de Noailles, general of brigade, commander in chief of the right northern division of the army at St. Domingo, dated the 6th of November, 1803, a council of prizes was established for Cape St. Nicolas Mole; who, on the 30th November, 1803, in consequence of a report made by their officer on the 29th, "that the Charlotte was cleared from the cape, for New-York, and was captured and recaptured, as before; that he is positive she was first detained, and afterwards condemned, by the captain of the British frigate; that it is evident she was prize to the English, and was found with an English prize-master on board; and concludes by stating, as the result of all this, that she and her cargo ought to be considered as English property, and ought to be condemned;" they do condemn the vessel and cargo, as good prize, taken from the British, and order her to be sold for the benefit of the captors. The vessel lay at St. Jago, at the time of the condemnation; and the transhipment into the Messenger, took place on the 5th November. She was entered at Philadelphia on the 5th of December. The counsel contended, on these facts, that the condemnation was conclusive as to the property. That the vessel being in a Spanish port, was no objection. That prima facie the court must presume, the tribunal that gave the sentence, was duly authorized to pass it; and that it is no objection to the condemnation, that the cargo was previously sold. Cases cited on this point: 3 C. Rob. Adm. 269; Bynk. B. 1, c. 15; Vatt. Law Nat. p. 515, B. 3, 5132; 1 Corp. de Pri. 8, 370; Mart. 9S; Lampridi. p. 1S3; 2 Rath. 594; 4 C. Rob. Adm. 51; 8 Term R. 192. 3d. If all this be against the defendant, yet they are bona fide possessors; and according to correct opinions of civil-ians, the plaintiff, if he recovers, ought to pay the amount of what the coffee cost, or what it is reasonable to think the plaintiff would have given for the release of the property. That fraud, according to the understanding of civilians, consists in combination, and secures benefit to ourselves, and injury to others. On these points: 2 Kames, Eq. 390, 391; 2 Koch. 708; 1 Grot. 395; Puff. Law Nat. 451; 1 Ruth. Inst. 135; Case of The Neptune, before the district court of Pennsylvania [unreported].

On the other side were cited 2 Vatt. Law Nat. 272; Mart. 105; Peake, Ev. 47, 48; 1 C. Rob. Adm. 119, 135; 2 C. Rob. Adm. 209; 4 C. Rob. Adm. 35; 3 C. Rob. Adm. 192, 53, 83.

The defendant moved to nonsuit the plaintiff, upon the ground, that, this being a cause dependent on the question of prize or no prize, it belonged exclusively to the district court. Cases cited: 3 Term R. 341; Cro. Eliz. 685; 13 Coke, 52; 3 Bulst. 27; 1 Sed. 320; 2 Lev. 25; 2 Sand. 259; 12 Mod. 134; Carth. 432, 474; Doug. 572; 3 Term R. 333; Glass v. The Betsey, 3 Dall. [3 U. S.] 6; [Ross v. Rittenhouse] 2 Dall. [2 U. S.] 165; [Doane v. Penhallow] 1 Dall. [1 U. S.] 218; Mart. 100; Doug. 592; 2 Brown, Civ. & Adm. Law, 213; 2 C. Rob. Adm. 198; 3 C. Rob. Adm. 82.

On the other side were cited: Comb. 120; Carth. 31; 3 Keb. 297, 360, 364; 1 Lev. 243; 12 Mod. 16, 143; 1 Tuck. Blacks. App. 51, 52; 2 Bior. & D. Laws, 516 [1 Stat. 451]; [Talbot v. Commanders & Owners of Three Brigs] 1 Dall. [1 U. S.] 95; [Miller v. The Resolution] 2 Dall. [2 U. S.] 4; [Del Col v. Arnold] 3 Dall. [3 U. S.] 333; 2 Wood, Lac. 451, 454; 2 Burrows, 685, 1209; 10 Mod. 80; 4 C. Rob. Adm. 232, 240; [Taxier v. Sweet] 2 Dall. [2 U. S.] 81.

The motion for a nonsuit was overruled; THE COURT dividing upon it.[2]

WASHINGTON, Circuit Justice (charging jury). This is an action of trover and conversion, the ground of which is, property in the plaintiff in the goods claimed, and a conversion by the defendant. The evidence, to establish

---

[2] Upon the motion for a nonsuit, the court was divided in opinion. Judge Peters thought we had jurisdiction. I was of a different opinion. No reasons were given. But those which governed me, were, shortly, as follows: The Charlotte was captured by the English frigate, as prize; was recaptured by the French privateer, as prize; sent into Cuba, and afterwards condemned. The plaintiff, at the time of the capture, had an indisputable title to the property in question, if it is identified; but, if it was lawfully seized and condemned, the right of the plaintiff was divested. The very question in issue, therefore, is whether the property in dispute was captured as prize, and lawfully condemned, so as, by the law of nations, to change the property. The question, therefore, of prize or no prize, is the very gist of this action; and all the cases, from the earliest period, prove that such a question, as well as the consequences of it, belong exclusively to the court of prizes; and, in this country, to the district court. W.

the right of the plaintiff to the goods, brought in the Messenger, and delivered to the defendant, is very contradictory. It is essential to the plaintiff's recovery, that he should satisfy you upon this point. It appears, that other coffee than that belonging to the plaintiff, was shipped from the cape; that the marks upon the packages of the plaintiff's coffee, were different from those which appeared on the packages entered at the custom house at Philadelphia. It therefore becomes highly important, that you should carefully examine the evidence; and, unless you are satisfied, that the plaintiff has established his right of property, in the very coffee delivered to the defendant, your verdict must be for the defendant. But, if you should be of opinion, that the plaintiff has proved ownership in that identical coffee, delivered to defendant, then we are of opinion, that the condemnation at the Mole did not affect it. A condemnation of neutral property, by an unauthorized tribunal, is not to be regarded by the courts of other nations. It is contended, that, prima facie, the council of prizes at the Mole, is to be considered as a legitimate court. I admit, that, where we find a condemnation by a foreign court, of the origin of which we are not informed; we ought to presume it a legitimate tribunal. But, when the source of its authority and constitution is stated, we ought to examine it; and, if it be contrary to the usual mode of constituting courts, it shifts the burden of proof upon the party who would support the condemnation; particularly as it is more easy to prove the legitimacy of the court, than to disprove it. We know, that the appointment of courts is, in all civilized countries, by the sovereign power. This, however, may be lodged by the sovereign, in a subordinate civil officer; nay, in a military commander, if the sovereign so chooses. But, this latter mode is so unusual, that, when we hear of a court being constituted by a military commander; and, particularly where it is not clear, that he was, at the time, commander-in-chief, it destroys the presumption of its legality; so as to require the party, who would support the condemnation, to show that the court was instituted by lawful authority. The court being agreed upon this point, we think it unnecessary to decide the other objections to this sentence.[3]

The jury found for the plaintiff.

NOTE. If the question be, whether there has been a legal condemnation, to alter the property in a suit or claim, by the former British owner, it can only be made in the prize court, to decide whether she had become legal prize, and whether the property had been altered or not. 2 Brown, Civ. & Adm. Law. 214; 2 C. Rob. Adm. 239. In page 129 et seq., this author, Brown, is clear upon the points, that,

[3] I can meet with no cases at all applicable to this point; but, upon principle, I think the distinction is correct. Marsh. 289, says "that the court, in which the sentence was pronounced, must appear to have been lawfully constituted, and of competent jurisdiction."

in such a case, the question belongs exclusively to the provincial court. If the taking be not as prize, action, to repair the damage, may be at law; aliter, if taken as prize. Doug. 593; 4 Term R. 390. The prize jurisdiction does not depend on locality, but on the subject matter. 2 Brown. Civ. & Adm. Law. 222. If the subject matter be prize, it excludes the common law courts. Id. 225.